Pearson, J.
 

 This was an action of assumpsit for freight of goods. To prove the terms of the contract, the Defendant offered to read the deposition of a witness, who was, at the time of the trial, absent from this State, The Plain
 
 *14
 
 tiff objected. The facts are, that the witness was a seafaring man, whose residence was in this State, but his vocation required him frequently to go out of the State on a voyage; and after a temporary absence he would return, and then go out of the State again, as his business called him. An order was obtained to take his deposition. After it was taken, he went on a voyage, and returned, and then left again, and had not returned at the time of the trial. It was held in the Superior Court, that the deposition could not be read, and for this the Defendant excepts. By the Revised Stat. Ch„ 31, Sec. 68, it is provided, “ when any person, who may be a witness in any civil case in any of the said Courts, shall reside out of the State, or, shall, by reason of age, or bodily infirmities, be incapable of attending, to give his testimony in Court, or shall be in a dangerous State of health, or
 
 about to leave the. Slate,
 
 or be a prisoner confined in Jail, oath thereof being made, the Court shall issue a commission to have his deposition taken, which shall be received as legal evidence.” By Sec. 70, it is provided, “ if any person who may be a witness, in any of the said Courts, shall be under the
 
 necessity of leaving the State
 
 before such cause is to be tried, or even before such cause shall be at issue, or be in a dangerous state of health, upon oath thereof, the Court shall issue a commission to have his deposition taken, which shall be received as legal evidence.” This is a re-enactment of the'act of 1777, and the question is, does the deposition offered come within its operation ? This Statute makes an encroachment upon the common law, in reference to the trial by Jury; which is to be held sacred according to our “declaration of rights,” of which it is a prominent principle, that witnesses ought to be examined in the presence of the Jury ; we are bound therefore, by a well settled rule of construction, not to carry this encroachment beyond the point, to which, it is clear, the law makers intended to go.
 

 
 *15
 
 It is readily conceded, that the? expression,
 
 “under the necessity of leaving the State,”
 
 is not to be taken in its strict sense, but it is to have a liberal interpretation, as it is used in common parlance, when it is said in reference to a man’s business, “ it is
 
 necessary
 
 for him to go from cne place to another,” because the word “ necessity,” taken literally, would confine the Statute to very narrow limits.
 

 So, on the other hand, it is very obvious, that the expression, ‘‘about to
 
 have
 
 the State,” is not to be taken, in the sense of the mere act of
 
 going out
 
 of the State, because this would give the statute a most unbounded operation, in which would be included the case of a merchant, whose business called him to New York, or Charleston, and who expected to be absent but a few weeks; and the case of a witness, who not being solicitous to face the jury, upon a cross examination, might find it convenient to visit a friend in Petersburg or Camden for a few weeks.
 

 If the expression is taken according to the sense, in which it is used in common parlance, it conveys almost the idea of being about to
 
 remove
 
 from the State, and make exchange of domicile, for if it is asked,
 
 “Is
 
 A. B. about to leave the State ?” The answer is, “ No : he is going to the South on business, or he is going on a trip of pleasure, and to see the world.” But, as “ move” is not the word used, — and it would certainly have been the most apt term, if a change of domicil was required, — we do not feel at liberty to confine the word “ leave,” to precisely the same signification. And, as wé cannot give to it the loose meaning of merely going out of the State, or the restricted meaning of removing from the State, we are forced to take the middle ground, and give to it the signification, leaving the State, either with the purpose of changing the domicil, or of being absent for so long a time, as to make ■ a postponement of the trial, until his return, inconsistent
 
 *16
 
 with the due administration of the law, as if the witness were to leave, to go on a voyage to China, or to seek his fortune (for a few years) in California. In putting a construction on this Statute, we must look to the evil .for which it was intended to give a remedy. It was this : By the common law, and according to the mode of tidal by Jury, no testimony could be heard, unless the witness was in the presence of the Jury, so as to let them judge, by his looks, his demeanor, his manner, on cross-examination, &c., what credit he deserved. In State cases, this rule never has been departed from; but, in civil cases, it was found to be inconvenient in many cases, and thereupon, the Court of Equity, in aid of the Common Law Courts, assumed jurisdiction, to order a commission, under which the deposition of a witness, residing in a foreign country or who was unable to come before the Jury, by reason of age or infirmity, or who was about to quit the kingdom, might be taken; and the parties are required, under the penalty of being in contempt of that Court, to allow a deposition, so taken, to be read as evidence on the trial. The evil was, the expense and delay incident to this application to a Court of Equity, and the remedy intended, was to confer power on the Courts of Common Law, to have depositions taken, and allow them to be read in evidence, in all cases where it could be done by an application to a Court of Equity. In the pleadings in the English cases, the phrase is, “ about to
 
 quit
 
 the kingdom.” This seems to •be synonimous with “ about to
 
 leave
 
 the State,” and we are confirmed in our construction of the Statute, by the fact, that all applications to Courts of Equity are put oa the ground, that the witness is about to quit the kingdom, either with the intention of residing abroad, or of going to some
 
 distant
 
 country, — for instance, the East Indies,— which implied a long absence.
 

 It is saicl to be a great hardship upon a sea-faring man,
 
 *17
 
 even although his voyages are confined, to New York, Norfolk, or Charleston, and his absence is temporary, (some three weeks at a time,) to be required to give up his vocation, and lose his place in a vessel, in order that he may attend before the Jury as a witness. This is true. But it is equally true, that it is a great hardship on a lawyer, a doctor, or a school master, or a farmer, or a ferryman, to be required to leave his business, and go from Currituck to Cherokee, in order to give his testimony in presence of the Jury; and yet, such is the law. The fact is, every citizen is concerned in the due administration of the law, and is bound (as Lord Coke expressed it,) “ to do suit to the Court of his sovereign,” and must submit to the rule, “ private interest should yield to public convenience.”
 

 There is another matter, which is worthy of consideration, in its bearing upon the construction of this Statute. For whose benefit was the Statute made ? Was it to favor the witness, or the party who requires his testimony? Most obviously, it was intended for the benefit of the party, and to save him the expense and delay of applying to Equity. For, if a witness reside abroad, or is unable, from age or sickness, to attend, or is about to leave the State there is no process by which he can be subjected to any penalty, except in the last instance, upon the supposition that he returns, so that a
 
 scire facias
 
 may be served on him, requiring him to show cause for not attending as a witness. Assuming that the Statute was made for the benefit of the party, it follows that a deposition should never be received, when the party has it in his power to compel the attendance of the witness, by enforcing the penalty, and by an action for damages ; or where the party can obtain a continuance, on account of the absence of the witness. It is a rule in the Superior Court, to grant a continuance upon an affidavit, that the witness is material,
 
 *18
 
 is absent without consent, and t’hat the party expects to be able to have the benefit of his attendance at the next term.
 

 We conclude, therefore, that t’he meaning of the Statute is, to allow a deposition to be received in evidence, when, ever the witness has left the State, either with an intention of changing his domicile, or under -an expectation of being absent for a time, wnich will include two ''terms of the Court,- — say six months.' But, that it cannot be received, when the witness is absent
 
 temporarily,
 
 (as it is expressed in the exception,) by which we understand, on a voyage to Charleston, or New York, when his return may be expected in two or three months, at farthest.
 

 Bee -Curiam. Judgment affirmed.